IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LITIGATION<br><br>This Document Relates to:<br><br>*Graham v. Philips, et al.*, #22-224 | Master Docket: Misc. No. 21-1230<br><br>MDL No. 3014 |

## MEMORANDUM OPINION

I.    Introduction

The *Graham* case, Civ. No. 22-224, was filed in a Kentucky state court and names Gould's Discount Medical, LLC ("Gould's"), a durable medical equipment ("DME") middleman, as one of the defendants. Defendants Philips RS North America LLC, Koninklijke Philips N.V., Philips North America LLC, Philips Holding USA, Inc., and Philips RS North America Holding Corporation (collectively, "Philips") removed the case to the United States District Court for the Western District of Kentucky, arguing that Gould's was fraudulently joined. The case was transferred to this court to manage as part of the Philips Recalled CPAP, Bi-Level PAP and Mechanical Ventilation Products Litigation, MDL No. 3014 ("Philips MDL"). Philips argues, in the alternative, that this court should sever and remand the claims against Gould's, but retain the claims against Philips in this multidistrict litigation ("MDL").

Pending before the court is a motion to remand this case to the Kentucky state court filed on August 31, 2023, by Gayla and Robert Graham ("the Grahams") (Civ. No. 22-224, ECF No. 72). The court held oral argument on the Grahams' remand motion on May 6, 2025 (Tr., Civ. No. 22-

224, ECF No. 94) and the parties filed post-argument supplemental briefs (ECF Nos. 95, 96). The motion is fully briefed and ripe for decision.

II.    Procedural History

The Grahams originally filed their case in the Circuit Court for Jefferson County, Kentucky (the "state court"). Philips removed it to the United States District Court for the Western District of Kentucky. The Judicial Panel on Multidistrict Litigation ("JPML") transferred the case to this court for inclusion in the coordinated or consolidated pretrial proceedings for the Philips MDL pursuant to 28 U.S.C. § 1407.

Deadlines regarding remand motions in the Philips MDL were extended several times by way of pretrial orders. *See, e.g.* ECF Nos. 701, 1901. On May 9, 2024, the court entered a Docket Management Order ("DMO") (Misc. No. 21-1230, ECF No. 2769), which stayed resolution of pending remand motions until after the deadline to register for the personal injury settlement expired and set deadlines for all personal injury cases filed by "Litigating Plaintiffs" (i.e., individuals who did not participate in the private settlement of personal injury claims). ECF No. 2769 ("10. If after the Registration Deadline, any cases remain for which a Litigating Plaintiff has moved to remand to state court, the Court will set a schedule for those motion(s), including oral argument, following the Registration Deadline.").

The registration deadline for the private settlement was January 31, 2025. The court held a consolidated oral argument on the numerous pending remand motions in the Philips MDL on May 6, 2025 (ECF Nos. 3249, 3250). Philips acknowledges that the Grahams complied with all the requirements of the DMO, despite the pending remand motion.

A.  The operative allegations against Gould's

Because the fraudulent joinder arguments relate to the middleman, Gould's, the court will review the allegations against Gould's in some detail.  The Grahams named both Gould's Discount Medical, Inc. and Gould's Discount Medical, LLC, as defendants.

The Grahams alleged that Gayla Graham began using a Philips DreamStation CPAP device in 2018 and she was diagnosed with sinonasal undifferentiated carcinoma in 2021.  Complaint ¶ 10 (Civ. No. 22-224, ECF No. 72-2).  The Grahams asserted claims against all defendants (including Gould's) for: (1) negligence in the promotion, supply and distribution of the Philips CPAP device and failure to warn that the device was not reasonably safe for its intended purpose (¶ 12); (2) strict liability under the Kentucky Product Liability Act ("KPLA"), KRS 411.340,  for supplying a defective and unreasonably dangerous product (¶ 17); (3) unfair, false, misleading or deceptive acts under the Kentucky Consumer Protection Act, KRS 367.170, (¶¶ 22-23); and (4) breach of express or implied warranty under Kentucky law (¶¶ 27-32).  There are few, if any, facts alleged about Gould's specific conduct.  Paragraph 28 of the Complaint provides:

> 28. Defendants, Respironics, Inc., Philips RS North America, LLC, Gould's Discount Medical, Inc., and Gould's Discount Medical, LLC **expressly or impliedly warranted** the Philips DreamStation CPAP was merchantable and fit for the ordinary purpose for which such product was used and fit for the purpose for which it was being used at the time of the incident causing injury to the Plaintiff, Gayla Graham.

ECF No. 72-2 (emphasis added).


III.    Discussion – Subject-matter jurisdiction

A.  Subject-matter jurisdiction

As an initial matter, the court must confirm that it has subject-matter jurisdiction over this case.  The Grahams explicitly challenge this court's jurisdiction.  Federal courts have a

nondelegable duty to sua sponte review actions to confirm that they have jurisdiction at all phases of the case. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

B.  Citizenship of Gould's

The Grahams aver that Gould's is a citizen of Kentucky.  Philips did not contest that Gould's is a Kentucky citizen, but argues only that Gould's was fraudulently joined. *See* Civ. No. 22-224, ECF No. 94 at 8-30.

The citizenship of an LLC is based on the citizenship of each of its members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412 (3d Cir. 2010).  The Graham complaint did not address the citizenship of each of Gould's members.  Philips affirmatively stated in its notice of removal in the *Hatzell* case, Civ. No. 24-533, that at least three of the members of Gould's are citizens of Kentucky.  Civ. No. 24-533, ECF No. 1 ¶ 36 ("Gould's Discount Medical, LLC is a limited liability company with multiple members—at least three of which, Edmund L. Gould, Sharon S. Gould, and Kenneth C. Gould, are upon information and belief citizens of Kentucky.").

Based on Philips' submission to the court, the court finds that Gould's is a citizen of Kentucky.  The court must, therefore, consider whether Gould's was fraudulently joined.  If not, the court will lack subject-matter jurisdiction.


IV.    Discussion -- Fraudulent Joinder

The Grahams argue that the initial removal from the state court was improper because the Grahams and Gould's are both citizens of Kentucky.  Philips does not contest that Gould's would destroy diversity of citizenship jurisdiction.  Instead, Philips invokes the "fraudulent joinder" doctrine to argue that Gould's citizenship can be ignored because it was improperly named as a

defendant in order to defeat removal.  The Grahams maintain there was no fraudulent joinder and the entire case should be remanded to the state court.

>    A.    General

This court will apply Third Circuit law with respect to the issue involving fraudulent joinder and remand.[1]  As explained in *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 294 F. Supp.2d 667 (E.D. Pa. 2003):

> As an MDL court sitting within the Third Circuit, defendant Wyeth is correct that we must apply the fraudulent joinder standard of our Court of Appeals, not that of the Eleventh Circuit. *See In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174 (D.C.Cir.1987); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 86 F.Supp.2d 481, 485 (E.D.Pa.2000).

*Id.* at 672.

>    B.    Removal

The court in *Contreras Madrid v. Walmart Stores East, LP*, No. CV 24-5229, 2025 WL 824124 (E.D. Pa. Mar. 14, 2025), discussed the standard for removal:

> A defendant in state court can remove a case to federal court if the federal court would have original jurisdiction over it. *See* 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).

*Id.*

---

[1] The "fraudulent misjoinder" doctrine is not at issue in these cases.  The court explained in *Brookside Banquets, LLC v. Selective Insurance Co.*, No. CV2108832KMCLW, 2021 WL 6135940 (D.N.J. Dec. 29, 2021), that both doctrines "focus on the idea that the non-diverse parties were invalidly included for the purpose of defeating diversity jurisdiction."  *Id.* at *2.  The court explained the distinction:  "Fraudulent joinder focuses on the merits, i.e., whether the plaintiff possesses a colorable cause of action against the non-diverse defendant. Fraudulent misjoinder focuses on procedure, i.e., whether the claims against the diverse and non-diverse defendants, even if viable, may properly be joined in the same action."  *Id.*

When a case has been removed to federal court and fraudulent joinder is raised by the

remover, courts recognize that:

> The **removing party arguing fraudulent joinder has a "heavy burden** of persuasion." *Steel Valley Auth.*, 809 F.2d at 1012 n.6. **The district court must consider the complaint at the time the notice of removal was filed and accept all factual allegations in the complaint as true.** *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992). Although **a court** cannot "step 'from the threshold jurisdictional issue into a decision on the merits,'" it **can "look to more than just the pleading allegations" when ruling on a fraudulent joinder motion**. *Briscoe*, 448 F.3d at 219 (quoting *Boyer*, 913 F.2d at 112). **Thus, a removing defendant can rely on "evidence outside the pleadings, including such supporting documents as affidavits and deposition transcripts."** *Yellen v. Teledne Cont'l Motors, Inc*., 832 F. Supp. 2d 490, 503 (E.D. Pa. 2011) (quoting Charles A. Wright & Arthur R. Miller, 14C <u>Federal Practice & Procedure</u> § 3723.1 (4th ed., Apr. 2021 update)).

> When deciding whether it has subject-matter jurisdiction, the Court's examination of the plaintiff's claims is less probing than on a motion to dismiss. *Batoff*, 977 F.2d at 852. Therefore, even if a party is not fraudulently joined, the claims against that party may ultimately be dismissed on a Rule 12(b)(6) motion. *Id.* Indeed, **the fraudulent joinder analysis requires the court to ask only whether the claims are** "**wholly insubstantial and frivolous**," and "**all doubts should be resolved in favor of remand**." *Id.* at 851–52.

*Id.* at *2 (emphasis added).

   C.    Fraudulent Joinder

With respect to fraudulent joinder, the applicable standard was recently summarized in

*Contreras Madrid v. Walmart Stores East, LP*, No. CV 24-5229, 2025 WL 824124 (E.D. Pa. Mar.

14, 2025):

> A federal court has diversity jurisdiction where there is complete diversity—that is, no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150 (3d Cir. 2017). The doctrine of fraudulent joinder, however, allows a defendant to remove an action to federal court if a nondiverse defendant was joined solely to destroy diversity jurisdiction. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). **Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."** *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (quoting

*Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)). If the court determines joinder was fraudulent, it "can disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Id.* (quotation and citations omitted). But if the court determines joinder was not fraudulent, it lacks subject matter jurisdiction and must remand to state court. *See* 28 U.S.C. § 1447(c).

*Id.* at *2.

       D.    Summary of burden

Philips has a "heavy burden" and all doubts must be resolved in favor of remand. The remand standard is more deferential toward the plaintiff's claims than the motion to dismiss standard. In other words, the court may remand a case to the state court even if it believes the state court may dismiss the case for failure to state a claim. It is Philips' burden to show there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant." *Id.*

      V.    <u>Discussion -- applicable pleading standard</u>

       A.  State or federal pleading standard

One disputed legal issue is whether the Kentucky or federal pleading standard applies to determine whether the joinder was fraudulent. The Grahams argue that to determine whether a state court complaint asserts a colorable claim against a defendant, the court must apply the applicable state law pleading rules.

In *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), the Third Circuit Court of Appeals instructed: "**If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court**." *Id.* at 111

(quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983)) (emphasis added);

*accord In re Briscoe*, 448 F.3d at 219 ("district court **must rule out any possibility that a state**

**court would entertain the cause** before holding that joinder of a non-diverse defendant was

fraudulent") (emphasis added); *Melendez v. Colorite Plastics Co.*, No. 15–1931, 2015 WL

6745841, at *6 (D.N.J. Oct. 19, 2015) ("While the facts alleged in the Complaint as to [the non-

diverse defendant] are indeed sparse and conclusory, the Court is not permitted in assessing

fraudulent joinder to conduct a Rule 12(b)(6)-type analysis under federal pleading standards . . .

**especially considering the Complaint was filed in state court under state court pleading**

**standards** . . . ."), report and recommendation adopted by, 2015 WL 6755277 (D.N.J. Nov. 4,

2015) (emphasis added).

 In *Ameen Pharmacy, LLC v. Optum RX, Inc.*, No. CV 24-10770, 2025 WL 1811394

(D.N.J. Feb. 21, 2025), report and recommendation adopted sub nom. *Ameen Pharmacy LLC v.*

*OptumRx, Inc.*, No. CV 24-10770, 2025 WL 1806616 (D.N.J. July 1, 2025), the court concluded

that under Third Circuit precedent, it must apply the more lenient New Jersey state pleading

standard rather than the federal *Iqbal/Twombly* standard.  The court explained that "a claim-by-

claim, element-by-element, merits evaluation is not necessary in the fraudulent joinder context."

*Id.* at *5.  The court stated:

> The fraudulent joinder issues presented in the instant remand motion involve the
> depth and adequacy of a pleading, which are insufficient to establish fraudulent
> joinder as instructed by the Third Circuit. *See Batoff*, 977 F.2d at 852; *Miloseska*,
> 2012 WL 6771978, at *3-4. Indeed, a review of the relevant Third Circuit case law
> confirms that the Third Circuit has found fraudulent joinder only in very limited
> circumstances, such as when a plaintiff's claims are barred by the statute of
> limitations or other clear principles of law. *See, e.g., In re Briscoe*, 448 F.3d at 216;
> *Roggio*, 415 Fed. Appx. at 433.

*Id.* at *6.

The court notes that the majority of federal district courts in Kentucky look to the Kentucky pleading rules, rather than the federal rules, to determine if the joinder was fraudulent. In *Combs v. ICG Hazard, LLC*, 934 F. Supp. 2d 915, 923 (E.D. Ky. 2013), the court explained: "The test for fraudulent joinder is whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed *under state law*. It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards." *Id.* at 923 (quoting *In re Darvocet, Darvon and Propoxyphene Prod. Liab. Lit.*, 889 F.Supp.2d 931, 940 (E.D. Ky. 2012)) (emphasis in original); *see In re Regions Morgan Keegan Sec., Derivative, & ERISA Litig.*, No. 2:09-MD-2009, 2013 WL 2404063, at *11 (W.D. Tenn. May 31, 2013) (collecting decisions applying Kentucky pleading standard). In *Hagyard-Davidson-McGee Associates, PLLC v. Federal Insurance Co.*, No. 5:20-CV-00171, 2021 WL 4130504 (E.D. Ky. Sept. 9, 2021) (concluding that the Kentucky pleading standard applies), the court noted there was no direct authority to support a heightened pleading standard for fraudulent joinder and the court must resolve all ambiguities in favor of remand. *Id.* at *4-5; *accord Krawiec v. State Farm Fire & Cas. Co.*, No. 3:24-CV-326, 2024 WL 4296954, at *3 (W.D. Ky. Sept. 25, 2024) ("On motions to remand concerning fraudulent joinder, Kentucky's pleading standard must be used when determining whether a claim has been adequately asserted.").

The question of fraudulent joinder is distinct from (and precedes) evaluation of a complaint under federal pleading standards. Fraudulent joinder evaluates a complaint that was filed in the state court, under the state pleading standard, to determine whether joinder of parties in the state court was so egregious that removal to federal court would be proper. The test is

whether the claims would survive in the same case in state court. The court in *In re Darvocet* explained the distinction:

> The Court will apply state pleading rules. The test for fraudulent joinder is whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed under state law. *Coyne*, 183 F.3d at 493. It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards. *See Murphy v. Broyhill Furniture Indus.*, No. 3:08–CV–2092–M, 2009 WL 1543918, at *5, 2009 U.S. Dist. LEXIS 46704, at *18 (N.D.Tex. June 2, 2009) ("The question presented to the court in a motion to remand based on improper joinder is not one of sufficiency of the pleadings under federal procedural rules, but rather the plausibility of a plaintiff's claim under applicable state law...."); *Kuperstein v. Hoffman–La Roche, Inc.*, 457 F.Supp.2d 467, 471–72 (S.D.N.Y.2006) (applying state pleading standards "[b]ecause the purpose of [the] fraudulent joinder analysis is to determine whether a state court might permit a plaintiff to proceed with his claims"); *see also Ayala–Castro v. GlaxoSmithKline (In re Avandia Mktg.)*, 624 F.Supp.2d 396, 417 (E.D.Pa. 2009) ("The Court measures the adequacy of Plaintiffs' factual allegations and legal claims against the legal standards of California, the state where this action was originally filed."). The Sixth Circuit has observed that when "addressing the sufficiency of pleadings" in a removed action, it "must look to state law." *Alexander*, 13 F.3d at 948. And it has repeatedly stated the fraudulent-joinder test in terms of whether the claims at issue could survive in state court. In *Jerome–Duncan*, for example, the court explained:

>> Under the doctrine of fraudulent joinder, the inquiry is whether [the plaintiff] had at least a colorable cause of action against [the non-diverse defendant] in the Michigan state courts. We thus look to Michigan law in determining whether [the non-diverse defendant] is a proper party, or whether it was fraudulently joined.

> 176 F.3d at 907. In short, Sixth Circuit precedent and common sense dictate the use of state pleading rules to determine whether McKesson is fraudulently joined.

*In re Darvocet*, 889 F. Supp. 2d at 940–41.

There are decisions that apply the federal pleading rules after a case is properly removed from the state court. For example, in *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764 (E.D. Ky. 2017), in rejecting the plaintiff's argument that Kentucky pleading standards should be used for a motion to dismiss in federal court, the court stated that "federal procedural law and Kentucky substantive products liability law applies to this action." *Id.* at 771. The court

noted that Federal Rule of Civil Procedure 81(c)(1) provides that the federal rules "apply to a civil action **after** it is removed from a state court." *Id.* (emphasis added).  The decision in *Red Hed* distinguished *Combs* and *Darvocet* on the basis that they involved an initial removal based on fraudulent joinder, rather than a motion to dismiss:

> These cases, however, involve a fraudulent joinder analysis, and provide no support for Plaintiffs' argument. There, the courts used state pleading standards to determine whether the plaintiffs joined a non-diverse defendant simply to keep the case out of federal court. Under a fraudulent joinder analysis, the test is "whether a reasonable basis exists for predicting that the plaintiff's claims against the non-diverse defendant could succeed under state law." *Combs*, 934 F.Supp.2d at 923. Where a claim survives state pleading standards, it necessarily means the plaintiff did not join the defendant only to defeat diversity; indeed, the plaintiff has a viable claim under state pleading rules. Thus, "[i]t makes little sense to measure the state-law viability of such claims ... by federal pleading standards." *Id*. And although state pleading standards govern a fraudulent joinder analysis, they do not apply generally to diversity actions.

*Id.*

This court will apply the Kentucky pleading standard to evaluate whether the Grahams' claims against Gould's and Philips in their state court complaint constituted fraudulent joinder.


B.  The Kentucky pleading standard

In *Combs*, the court described the relaxed notice pleading standard that applies under Kentucky Rule of Civil Procedure 8.01:

> In Kentucky, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Ky. R. Civ. P. 8.01(1)(a). Kentucky courts may dismiss a complaint only where a plaintiff "would not be entitled to relief under any set of facts which could be proved." *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010). "It is immaterial whether the complaint states conclusions or facts as long as fair notice is given." *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky.1960) (internal quotation marks omitted). Further, "the Rules of Civil Procedure with respect to stating a cause of action should be liberally construed" and "much leniency should be shown in construing whether a complaint ... states a cause of action." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) (internal quotation marks omitted and markings in original).

*Combs*, 934 F. Supp. 2d at 923–24; *accord Hagyard*, 2021 WL 4130504, at *5 ("Kentucky

applies the more lenient notice pleading approach, in which 'a complaint will not be dismissed

for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled

to relief under any state of facts which could be proved in support of his claim.'") (citation

omitted); *Krawiec*, 2024 WL 4296954, at *3 ("Under Kentucky's pleading standard, '[a]ll that is

necessary is that a claim for relief be stated with brevity, conciseness and clarity.'") (quoting

*Natural Res. and Env. Protection Cabinet v. Williams*, 768 S.W.2d 47, 51 (Ky. 1989)).

     Kentucky has rejected the *Twombly/Iqbal* pleading standard. In *Russell v. Johnson &*

*Johnson, Inc.*, 610 S.W.3d 233 (Ky. 2020), the Kentucky Supreme Court reiterated the lenient,

Kentucky "notice pleading" standard:

> "Kentucky is a **notice pleading** jurisdiction, where the 'central purpose of
> pleadings remains notice of claims and defenses.'" *Pete v. Anderson*, 413 S.W.3d
> 291, 301 (Ky. 2013) (citing *Hoke v. Cullinan*, 914 S.W.2d 335, 339 (Ky. 1995)). In
> accordance with Kentucky Civil Rule 8.01(1), "[a] pleading which sets forth a
> claim for relief ... shall contain (a) a short and plain statement of the claim showing
> that the pleader is entitled to relief and (b) a demand for judgment for the relief to
> which he deems himself entitled." As interpreted by this Court, "[i]t is **not**
> **necessary to state a claim with technical precision** under this rule, as long as a
> complaint gives a defendant **fair notice** and identifies the claim." *Grand Aerie*
> *Fraternal Order of Eagles v. Carneyhan*, 169 S.W. 3d 840, 844 (Ky. 2005) (citing
> *Cincinnati, Newport, & Covington Transp. Co. v. Fischer*, 357 S.W.2d 870, 872
> (Ky. 1962)).
>
> Importantly, "[w]e no longer approach pleadings searching for a flaw, a technicality
> upon which to strike down a claim or defense, as was formerly the case at common
> law." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989). When reviewing a
> complaint to determine whether it states a cause of action, it "should **be liberally**
> **construed**." *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983). Our liberal pleading
> standard was recently demonstrated when we held that **a complaint "couched in**
> **general and conclusory terms, complied with CR 8.01(1)**." *KentuckyOne Health,*
> *Inc. v. Reid*, 522 S.W.3d 193, 197 (Ky. 2017).

*Id.* at 240-41 (emphasis added); *see Johnson v. Class Act Fed. Credit Union*, No. 3:24-CV-

00622, 2025 WL 1173399, at *2 (W.D. Ky. Apr. 22, 2025) (recognizing "the significant

differences in the pleading standards between Kentucky and federal courts."); *Wells v. Bombardier Recreational Prods., Inc.*, No. 6:23-CV-165, 2024 WL 3812280, at *4 (E.D. Ky. Aug. 13, 2024) ("Kentucky has made clear that the federal bar is too high for cases in the Commonwealth, and the Court here must judge the adequacy of a Complaint against the lower, non-technical, bare-bones approach of the controlling jurisdiction.").

In *Pierson Trapp Co. v. Peak*, 340 S.W.2d 456, 460 (Ky. 1960), the Kentucky Supreme Court held: "It is immaterial whether the complaint states 'conclusions' or 'facts' as long as fair notice is given." *Id.* at 460. In *Albright v. Royse*, No. 2020-CA-0856-MR, 2021 WL 3117105, (Ky. Ct. App. July 23, 2021), the court reversed a trial court's determination that a claim "failed because the complaint was devoid of any factual allegation." *Id.* at *5. The court explained:

> We cannot agree that because the complaint did not aver that Royse testified in front of the grand jury, the claim fails as a matter of law. "All that our procedure presently requires is that the Complaint set out facts **_or_** conclusions ... sufficiently to identify the basis of the claim." *Nat. Resources and Environmental Protection Cabinet v. Williams*, 768 S.W.2d 47, 51 (Ky. 1989) (internal quotation marks and citation omitted).

*Id.* (emphasis in original). In *Albright*, the defendant argued that the complaint failed because it was "simply a recitation of the elements of malicious prosecution." The court rejected this argument and explained that "in *Russell*, the Court explicitly rejected adoption of the federal standard." *Id.* The court concluded: "'Kentucky Civil Rule (CR) 8.01(1) allows just the sort of pleadings [Albright] filed below." *Id.* (quoting *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, 617 S.W.3d 792, 810 (Ky. 2020).

V.    Discussion -- Kentucky "middleman" statute

Gould's is a "middleman," a DME supplier who provided the Philips CPAP device to the plaintiffs.  Philips argues that there are no valid claims against the middleman, and Gould's was fraudulently joined solely to defeat removal.

A.  The statute

Kentucky's so-called "middleman" statute, reads in full:

WHEN WHOLESALER, DISTRIBUTOR OR RETAILER TO BE HELD LIABLE
In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor, or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, **unless** such wholesaler, distributor or retailer, **breached an express warranty** or **knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer**.

K.R.S. § 411.340 (emphasis added).

[T]he statute makes clear that its protective shield is inapplicable in two instances:

(1) where the wholesaler, distributor or retailer breached an express warranty, or (2) where the wholesaler, distributor or retailer knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous.

*Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 551 (E.D. Ky. 2001).

Philips recognizes that the Grahams referenced an express warranty in their state court complaint, but argues they pleaded no facts to support an express warranty claim.  Philips speculates that the Grahams really intended to assert an implied warranty claim (ECF No. 95 at 4).[2]

---

[2] The Grahams deny this speculation (ECF No. 96 at 6).  Of course, plaintiffs are the master of their complaint.

14

With respect to the second exception (i.e., Gould's knew or should have known the CPAP device was unreasonably dangerous), Philips essentially makes a fact-based timing argument, i.e., that the applicable sales by the middleman Gould's came years prior to the recall. Philips argues there are no facts pleaded about how Gould's knew "at the time of the sale" that the CPAPs were defective.

In short, Philips points to the vague, conclusory allegations in the complaints. Plaintiffs argue the complaints satisfy Kentucky's bare bones, notice pleading standards. The court must consider whether the Grahams pleaded a colorable claim under either exception.

B. Split of authority

1. Decisions relied on by Philips

Philips points to several decisions by federal district courts in Kentucky which upheld removal based on fraudulent joinder arguments involving the middleman statute due to insufficient factual averments in the complaint. *See Salisbury*, 166 F. Supp. 2d at 551 ("plaintiffs' sole reference to the pharmacy defendants alleges mere inappropriate distribution and recommendation. Such a broad and cursory allegation is a far cry from alleging actual or constructive knowledge, however.")[3]; *Smith v. Wyeth In*c., 488 F. Supp. 2d 625, 629 (W.D. Ky. 2007) (adopting the prediction of Kentucky law in *Salisbury*); *Weixler v. Paris Co.*, No. CIV.A. 3:02CV390H, 2003 WL 105503, at *2 (W.D. Ky. Jan. 2, 2003) (recognizing "Kentucky courts have not defined the kind of allegations necessary to overcome KRS 411.340 in these circumstances" and requiring "some more specific or special knowledge of dangerousness by the retailer"); *Young v. Stock Yard Farm & Dairy Supply Inc.*, No. 1:10-CV-00186-R, 2011 WL

---

[3] The discussion in *Salisbury* is arguably dicta because the court identified, as a "fatal flaw," the lack of a causal link due to the omission of any averment that the pharmacy defendant sold the drug to the plaintiff. *Id.* at 549.

864834 at *5 (W.D. Ky. Mar. 10, 2011) (claim under the middleman statute was not colorable because the plaintiffs neglected to include in their complaint facts about the language of the express warranty or how they relied on the warranty). In *Young*, the court rejected the plaintiff's argument that he conclusorily pleaded an express warranty, explaining that the complaint failed to "describe the events surrounding the sale or denote any particular statements or facts upon which they relied in purchasing the [item]." *Id.* at *4.

Philips also cites *Kentucky National Insurance Company v. W. M. Barr & Company*, No. 7:05-130, 2005 U.S. Dist. LEXIS 63092 (E.D. Ky. July 1, 2005)[4] (ECF No. 80 at 13). In *Elkins v. Extreme Products Group, LLC*, No. CV 5:21-050, 2021 WL 8316416 (E.D. Ky. Dec. 21, 2021), the court described *Kentucky National* as follows:

> In *Kentucky National*, the Court concluded that Lowe's, the seller of the alleged defective product, was immune from suit under the Kentucky Middleman Statute because the plaintiff's complaint did not include any "allegations that: (1) the product was sold in an altered condition or package; (2) Lowe's provided or breached any express warranty; or (3) that Lowe's knew or should have known that the product was in a defective condition or unreasonably dangerous to the consumer." *Id.* at *4. While the **plaintiff failed to respond to the motion to dismiss** and the Court considered that fact in making its decision, the Court also concluded that Lowe's position was well-taken. *Id.* at *4-5.

*Id.* at *3 (emphasis added). It appears that *Kentucky National*, as well as several other decisions cited by Philips, involved a motion to dismiss, rather than the fraudulent joinder/removal standard.

### 2. Decisions relied on by the Grahams

Most of the analogous decisions apply the lenient Kentucky pleading standard and impose a high bar to demonstrate fraudulent joinder to support a remand of the case to the state court. *See, e.g. Thomas v. State Farm Fire & Cas. Co.,* No. 3:24-CV-328, 2024 WL 4957577, at

---

[4] The court did not find a Westlaw citation.

*4 (W.D. Ky. Dec. 3, 2024) (applying the "any set of facts" standard, "the Court cannot find that Thomas's negligence claims against Rebecchi have no glimmer of hope"); *Patterson v. Husqvarna Pro. Prods., Inc*., No. 4:23-CV-71, 2024 WL 102942 (W.D. Ky. Jan. 9, 2024) (holding that the plaintiff stated a colorable products liability claim against a manager of the retailer, Lowe's, under the Kentucky middleman statute); *Humana, Inc. v. Lundbeck, Inc*., No. 3:23-CV-348, 2023 WL 8085846, at *3 (W.D. Ky. Nov. 21, 2023) (explaining that defendant's affidavit was not an undisputed fact that satisfied the burden to show fraudulent joinder); *Slone v. Quest Energy Corp*., No. 7:21-CV-101, 2022 WL 4078127, at *2 (E.D. Ky. Sept. 6, 2022) (reiterating that "*state law* provides the pleading and substantive reference point as the Court queries for a glimmer of hope on the matters pleaded") (emphasis in original); *Hagyard*, 2021 WL 4130504, at *5 ("While the Original Complaint and Affidavit do not contain lengthy or detailed facts related to the ordeal, Kentucky law makes it clear that such specificity is not remotely required"); *Lee v. Trace3, LLC*, No. 3:20-CV-585, 2021 WL 9629077, at *6 (W.D. Ky. May 5, 2021) (conclusory complaint stated colorable claim under Kentucky's pleading rules); *Snell v. State Auto Prop. & Cas. Ins. Co.*, No. 6:21-CV-22, 2021 WL 1292509, at *3 (E.D. Ky. Apr. 7, 2021) (complaint passed the Kentucky "low bar" on plausibility and notice-pleading); *Mitchell v. Allergan USA, Inc*., No. 3:20-CV-183, 2021 WL 6882330, at *5 (W.D. Ky. Jan. 29, 2021) (rejecting the argument that removal was justified because the complaint was conclusory and commenting that "[e]ven if the complaint were too conclusory even under Kentucky law, [the defendant's] remedy is to seek a more definite statement"); *Warner v. Midnight Recovery, Inc*., No. 3:19-CV-00453, 2020 WL 1105111, at *6 (W.D. Ky. Mar. 6, 2020) (plaintiff asserted a colorable claim under Kentucky pleading rules); *Hazelwood v. S Serv., LLC*, No. 3:19-CV-105, 2020 WL 13543882, at *4 (W.D. Ky. Feb. 13, 2020) ("Uncertainty as to whether Hazelwood's

claims will ultimately succeed on the merits does not mean that the plaintiff fraudulently joined [the nondiverse defendant]").

In *Wells*, a federal district court specifically rejected an argument similar to that made by Philips here, i.e., that the plaintiff "failed to plead sufficient allegations to overcome [the nondiverse defendant's] middleman protection." *Wells*, 2024 WL 3812280 at *4. The court commented: "Simply put, the [ ] Defendants demand more specificity than Kentucky courts require." *Id.*

3.   Reconciling the decisions

The decisions on which Philips relies involve predictions of Kentucky law which, with one exception, predate the 2020 articulation of the Kentucky pleading standard by the Kentucky Supreme Court in *Russell,* 610 S.W.3d at 240-41. In *Salisbury*, the court recognized that liability by pharmacies under the middleman statute for breach of express warranty was "a question of first impression in Kentucky." *Salisbury*, 166 F.2d at 551. In *Smith* (which addressed only the express warranty exception to the middleman statute), the court recognized that the Kentucky courts had not addressed the standard to assert colorable claims under the middleman statute. *Smith*, 488 F. Supp. 2d at 629. The court noted that, if pled, "the second exception of the Middleman Statute might apply." *Id.; accord Weixler,* 2003 WL 105503 at *2 (recognizing "Kentucky courts have not defined the kind of allegations necessary to overcome KRS 411.340 in these circumstances"). It is now relatively clear that under Kentucky law, a conclusory allegation may be sufficient to defeat a fraudulent joinder/removal argument. Philips' briefing (ECF Nos. 80, 95) did not discuss or acknowledge *Russell*.

The one post-*Russell* case cited by Philips is *Castle v. 3M Co.*, 664 F. Supp. 3d 770 (E.D. Ky. 2023). Philips' discussion of *Castle* (ECF No. 95 at 2) was incomplete and not applicable.

The court in *Castle* did state, as summarized by Philips: "The burden of showing the predicate, by a preponderance of the evidence, is on the distributor. *See Id.* Showing the exception falls on the claimant." *Id.* at 774.[5]  Philips, however, omitted the remainder of the court's analysis in *Castle*:

> To defeat a fraudulent joinder claim, Plaintiffs need not show that they will prevail against Supplier Defendants at trial; instead, they need only show that they have a "colorable basis" for recovery. *See Coyne*, 183 F.3d at 493. They have met that **low bar** in this case**. Given that the Kentucky Middleman Statute does not absolve distributors and suppliers from liability when they know or should have known of a product's defect, and given the allegations in the Complaint, it is far from "clear that there can be no recovery" against Supplier Defendants**. *See Alexander*, 13 F.3d at 949. Kentucky law generally holds product sellers liable for putting a defective product in the stream of commerce, resulting in injury. *See Thacker v. Ethicon, Inc.*, 47 F. 4th 451, 459 (6th Cir. 2022); KY. REV. STAT. § 411.340. A middleman meeting his burden on non-alteration may get immunity (assuming manufacturer amenability to suit), but **a middleman on actual or constructive notice of a defect enjoys no such protection.**
>
> 3M's **argument that Supplier Defendants were fraudulently joined because Plaintiffs have not built or displayed a case against Defendants fails**. "[I]n determining whether a defendant has been fraudulently joined, **a district court's task is limited to determining 'whether there is arguably a reasonable basis for predicting that the state law might impose liability** on the facts involved.' " *Adams v. Minn. Mining & Mfg. Co*., 4:03-CV-182, 4:04-CV-2, 2004 WL 718917, at *3 (W.D. Ky. March 30, 2004) (quoting *Alexander*, 13 F.3d at 949). "The question is not whether the [P]laintiffs will recover from [Defendants]" but rather "whether the [P]laintiffs could recover from [Defendants] under Kentucky law." *Winburn v. Liberty Mut. Ins. Co*., 933 F. Supp. 664, 666 (E.D. Ky. 1996). While courts are permitted to pierce the pleadings, the exercise does not replicate summary judgment or even reach the demands of a Rule 12 screening; piercing is for the limited purpose of considering "undisputed facts that negate the claim" and "is not intended to provide an opportunity to test the sufficiency of the factual support for a plaintiff's claim, as is done in a Rule 56 motion." *Walker*, 443 F. App'x at 956.

*Id.* at 775.  In *Castle*, the court held there was no fraudulent joinder and remanded the case to the Kentucky state court.

---

[5] At some point in time, the Grahams will have to prove their claims against Gould's.  A response to a removal motion premised on fraudulent joinder is not that time.

In *Wells*, the court articulated the distinction between the two lines of cases:

> Notably, all but one of the cases the [ ] Defendants cited in support were decided before *Russell*. The dated federal cases that call for greater specificity seem wedded to federal pleading principles. Kentucky has made clear that the federal bar is too high for cases in the Commonwealth, and the Court here must judge the adequacy of a Complaint against the lower, non-technical, bare-bones approach of the controlling jurisdiction.

*Wells*, 2024 WL 3812280, at *4.  In *Wells*, the court held that a conclusory complaint "clearly and adequately invokes the second exception to the middleman statement."  *Id.*

This court finds the majority approach is the appropriate standard to apply.  After *Russell*, every decision found by this court's research applies the lenient, bare bones, pleading standard in deciding whether a complaint states a colorable claim under the Kentucky middleman statute. *Accord Ameen*, 2025 WL 1806616 at * 4 (under Third Circuit precedent, court must apply the more lenient state pleading standard).

C.    Application

The court concludes that Philips did not meet its heavy burden in this case.  The court in *Wells* addressed a similar fraudulent joinder argument based on the Kentucky middleman statute. The removing defendant argued (as Philips does here) that the plaintiff failed to plead sufficient allegations to overcome the statutory middleman protection.  The court rejected that argument and, applying the more lenient Kentucky pleading standard, concluded that the complaint provided defendant with fair notice of the claim and remanded the case to the state court.  *Wells*, 2024 WL 3812280, at *5 ("Resolving all doubts in Plaintiffs' favor, under the forgiving Kentucky standard and the 'glimmer of hope' lens, validates joinder here."); *accord Castle,* 664 F. Supp. 3d at 775 ("Given that the Kentucky Middleman Statute does not absolve distributors and suppliers from liability when they know or should have known of a product's defect, and

given the allegations in the Complaint, it is far from "clear that there can be no recovery" against Supplier Defendants.").

Here, the Grahams allege in their state court complaint (albeit conclusorily) that Gould's made an express warranty about the efficacy of the Philips CPAP device and allege that Gould's knew or should have known the device was defective at the time it was provided to the user. Philips, thererfore, is on notice that the Grahams invoke both exceptions to the Kentucky middleman statute. The Kentucky Supreme Court has emphasized that it does not matter whether the allegations are conclusory, so long as fair notice is provided to the defendant. *Russell,* 610 S.W.3d at 240-41.

The court concludes that the Graham complaint does not fall within the "very limited circumstances" that would establish fraudulent joinder. Philips did not meet its heavy burden to show, as a matter of fact[6] or law, that the claims against Gould's are not colorable.

The court notes that even if more facts would be required, any flaws could be cured by an amended complaint. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (emphasizing the deference to a plaintiff's choice of forum and holding that post-removal amendment of complaint can deprive federal courts of subject-matter jurisdiction). The Grahams' counsel represented at the oral argument that Gayla Graham filled out lots of paperwork at Gould's; Gould's picked the CPAP device without giving her a choice; and Gould's people told Graham "it was the latest, greatest machine . . . and made other representations of efficacy." ECF No. 94 at 17.

---

[6] Philips did not introduce any undisputed facts, for example, by way of an affidavit from Gould's. At the oral argument, the court denied Philips' belated request to do so, over the Grahams' objection (ECF No. 94 at 22-23).

In sum, based on the allegations of the complaint and the Kentucky notice pleading standard, there is a colorable basis to impose liability against Gould's. Philips did not meet its heavy burden to show that Gould's was fraudulently joined in this case.

VI.    Discussion -- Severance under Rule 21

As alternative relief if the court determines that Gould's was not fraudulently joined, Philips asks the court to sever and retain the Grahams' claims against Philips as part of the Philips MDL. The Grahams argue that severance is not authorized or warranted.

A.   Whether the court has authority to sever

Federal Rule of Civil Procedure 21, entitled "Misjoinder and Nonjoinder of Parties," provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The court is aware of its authority, in some circumstances, to sever claims and parties pursuant to Rule 21 to achieve diversity jurisdiction pursuant to *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420-21 (3d Cir. 2010), and *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065 (3d Cir. 1979).

*Newman-Green* was a breach of contract case involving Venezualan defendants and one United States citizen domiciled in Venezuala, whose "stateless" status destroyed complete diversity. The case was litigated for several years and resolved on the merits by the district court. A jurisdictional challenge was raised for the first time on appeal. The appellate court granted the plaintiff's motion to amend the complaint to drop the "jurisdictional spoiler" to preserve complete diversity. *Id.* at 829. The Supreme Court held that the appellate court had authority to cure the jurisdictional problem itself, rather than remanding for the district court to

do so. *Id.* at 833. The Supreme Court observed that if the case was dismissed, the plaintiff could simply refile the suit and should not be compiled to jump through judicial hoops "for the sake of hypertechnical jurisdictional purity." *Id.* at 837. The Court "emphasize[d] that such authority should be exercised sparingly" in situations in which "the practicalities weigh heavily in favor" of exercising jurisdiction. *Id.* In exercising their discretion to sever, courts should consider whether dismissal of the nondiverse party would prejudice or provide tactical advantage to any party. *Id.* at 838.

*Zambelli* similarly involved a situation in which the case had been fully litigated and the lack of diversity of citizenship caused by one LLC entity was discovered, for the first time, on appeal. The Third Circuit Court of Appeals explained that "considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage." *Zambelli*, 592 F.3d at 420-21. The court explained that those considerations were particularly relevant where the plaintiff originally filed the case in federal court and could obtain complete relief against a non-diverse defendant simply by refiling the case without the defendant that destroyed diversity. *Id.*

*Publicker* was a breach of contract case originally filed in federal court by a distiller and its wholly-owned subsidiary against a bottle supplier. The district court, dismissed the subsidiary to preserve diversity jurisdiction and ruled in favor of the defendant supplier after a bench trial. The plaintiffs, in an effort to avoid the adverse judgment, argued on appeal that the entire case should be dismissed due to the lack of complete diversity. In *Publicker*, the Third Circuit Court of Appeals explained that courts have some power to sever even if diversity is lacking:

> [Publicker] argues that if complete diversity is lacking, then the court has absolutely
> no jurisdiction over the action. We see this view of the district court's power under

23

Fed.R.Civ.P. 21 as too restrictive. The court may dismiss a nondiverse party in order to achieve diversity even after judgment has been entered. *See Finn v. American Fire & Casualty Co.*, 207 F.2d 113 (5th Cir. 1953), Cert. denied, 347 U.S. 912, 74 S.Ct. 476, 98 L.Ed. 1069 (1954); *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003 (E.D.Pa.1975), Aff'd without opinion, 530 F.2d 966 (3d Cir. 1976). And although the district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed.R.Civ.P. 19, it has not been contended that Continental is an indispensable party with respect to the claims between Roman and Publicker.

*Publicker,* 603 F.2d at 1069.

In each of those cases, the plaintiff filed the original complaint in federal court and there were extensive proceedings on the merits before the jurisdictional challenge was raised. This case, by contrast, involves removal jurisdiction of a case originally filed in state court. In *Saviour v. Stavropoulos*, No. CV 15-5362, 2015 WL 6810856 (E.D. Pa. Nov. 5, 2015), the court commented:

"[W]hile Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Kips Bay Endoscopy Ctr., PLLC v. Travelers Indem. Co.*, No. 14-cv-7153, 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (quoting *Sons of the Revolution in New York, Inc. v. Travelers Indem. Co. of Am.*, No. 14-cv-03303, 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014)).

*Id.* at *5 (emphasis in original); *accord Klintworth v. Valley Forge Ins. Co.*, No. 17-CV-0448, 2018 WL 4521219, at *2 (N.D. Okla. Sept. 21, 2018) ("[T]here is a difference between curing a jurisdictional defect and creating federal jurisdiction in the first instance."); *Nobers v. Crucible, Inc.,* 602 F. Supp. 703, 709 (W.D. Pa. 1985) (remanding to state court where there was no original jurisdiction and distinguishing *Publicker* on the ground that the district court in *Publicker* had original jurisdiction).

The court need not resolve whether "frowning on severance" means that courts should, in all circumstances, treat removal cases different from cases originally filed in federal court. [7] Under the facts and circumstances of this case, even assuming the court has authority under Rule 21 to sever and retain the claims against Philips, it will decline its discretion to do so, for the reasons set forth below.

### B.  Whether severance is warranted

#### 1.  Split of authority

There is a split of authority about whether, even if authorized, the court should sever and remand nondiverse claims and retain jurisdiction over claims related to an MDL.  In *Saviour*, 2015 WL 6810856, which involved removal of a case concerning an alleged defective medical device with a nondiverse physician and a transfer of the case to an MDL, the court outlined the

---

[7] There are at least three reasons given for prohibiting Rule 21 severance in all removal cases: (1) deference to the plaintiff's choice of forum, *see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (plaintiff is "the master of the complaint," and controls whether to "establish—or not—the basis for a federal court's subject-matter jurisdiction," for example, by naming a defendant "from her own State and thereby destroy[ing] diversity of citizenship."); (2) the removal statute based on diversity of citizenship, 28 U.S.C. § 1441(b)(2), unlike 28 U.S.C. § 1332, contains a "forum defendant rule," *see In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 624 F. Supp. 2d 396, 409 (E.D. Pa. 2009) (Congress intended § 1441(b) to restrict federal jurisdiction and deemed defendants in cases involving a properly joined and served in-state defendant do not require access to the federal courts to avoid prejudice to out-of-state defendants); and (3) federalism/comity, *see Healy v. Ratta*, 292 U.S. 263, 270 (1934) ("Due regard for the rightful independence of state governments ... requires that [federal courts] scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined").

On the other hand, it is questionable whether there is a principled difference between cases originally filed in federal court where subject-matter jurisdiction is lacking and removed cases where subject-matter jurisdiction is lacking.  If in appropriate originally-filed cases subject-matter jurisdiction can be achieved after a court exercises its discretion under Rule 21, what difference does it make if the case is before the court due to original filing or being removed?  While there may be additional factors for the court to consider in exercising its discretion under Rule 21 in removal cases, i.e., the plaintiff's choice of forum, upon reflection, it would be hard to find that given analogous facts (i.e., a jurisdictional defect was discovered without the fault of either party after extensive proceedings were held), the decisions in *Newman-Green*, *Zambelli* and *Publicker* would have been different if those cases had been removed.  In other words, it is possible that the federal courts retain discretion, in an appropriate case, to achieve diversity jurisdiction in a removed case.  The Supreme Court's upcoming decision in *Hain Celestial Group, Inc. v. Palmquist*, 145 S. Ct. 1960 (2025), may be instructive on this issue.

applicable analysis for severing a party pursuant to Rule 21 in order to preserve diversity

jurisdiction: "(1) the party to be severed must be dispensable; and if so, (2) the Court must assess

whether severing would prejudice any of the parties in the litigation." *Id.* at *4.

    A minority of courts have severed claims against nondiverse medical parties.  In *Joseph

v. Baxter International Inc.*, 614 F. Supp. 2d 868, 870 (N.D. Ohio 2009), as amended (May 27,

2009), the court denied a motion to remand with respect to a pharmaceutical company involved

in an MDL, but severed and remanded the claims against nondiverse, dispensable medical

providers.  *Accord Mayfield v. London Women's Care, PLLC*, No. CIV.A. 15-19, 2015 WL

3440492, at *4 (E.D. Ky. May 28, 2015); *DeGidio v. Centocor, Inc.*, Case No. 3:09CV721, 2009

WL 1867676, at *1 (N.D. Ohio June 29, 2009), as amended (July 8, 2009).[8]  These courts

reasoned that the nondiverse medical providers: (1) were not necessary parties under Rule 19; (2)

were not indispensable parties under Rule 21; and (3) the inconvenience and prejudice to the

pharmaceutical company outweighed the prejudice to the plaintiffs.  In *Joseph*, the court

recognized that fighting on two fronts would be inconvenient and more expensive for the

plaintiffs, but believed that settlement was more likely if the case was part of an MDL and, even

if the case did not settle, the plaintiffs would benefit from the MDL process because they would

not bear the burden of having to litigate on their own.  *Joseph*, 614 F. Supp. 2d at 873.

    The majority of courts refuse to sever those kinds of claims and parties to achieve

jurisdiction (even assuming they have authority to do so).  In *Slater v. Hoffman-La Roche Inc.*,

771 F. Supp. 2d 524 (E.D. Pa. 2011), the court explained:

> The Court declines to exercise its discretion to sever WKH and remand only
> plaintiff's claims against WKH to state court. Although severance and remand of

---

[8] In *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204 (D. Nev. 2018) (collecting decisions for
the proposition minority view is wrong and not well-reasoned), the court observed that "[t]hese cases
have not enjoyed broad support." *Id.* at 1214 n. 10.

the claims against WKH would benefit Roche because plaintiff's claims against Roche would remain in federal court and would be transferred to the MDL, and although the discovery relevant to the claims against WKH and Roche is not completely identical, the Court concludes that the potential prejudice to defendants if WKH is not severed is outweighed by the prejudice plaintiff will suffer if there is a severance. First, the Court is mindful of the deference to be afforded plaintiff's choice of forum. *See Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294 (3d Cir. 2010) ( "[A] plaintiff's choice of forum should rarely be disturbed.") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Second, severance will prejudice plaintiff, who will be required to litigate in two different fora. Third, and most importantly, given the Court's determination that WKH, the Pennsylvania defendant, was not fraudulently joined, Roche's removal of the case was improper. Thus, severing and remanding only the claims against WKH would undermine 28 U.S.C. § 1441(b)'s prohibition on removal of cases involving forum defendants.

*Id.* at 530.

In *Saviour*, 2015 WL 6810856 at *4-6 (collecting decisions that refused to sever and transfer claims to an MDL), the court concluded that the medical provider was a dispensable party, but found that prejudice to the plaintiff outweighed the benefits of litigating in the MDL and remanded the case to the state court. The court noted the deference to be afforded plaintiff's choice of forum and the Supreme Court's admonition in *Newman-Green* that the authority to sever a non-diverse party "should be exercised sparingly"—where "the practicalities weigh heavily in favor of" preserving jurisdiction. *Id.* (quoting *Newman-Green,* 490 U.S. at 837). In addition, the court noted that severance would be inconsistent with the heavy burden removing defendants carry to show that a case is properly before the district court. *Id.* (citing *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)). The court explained:

Severing a non-diverse party at this stage of the litigation would be inconsistent with that burden. Severing Stavropoulos upon the removal of the case "would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." *Id.* "[M]any defendants would likely attempt to seek this post-removal action by the courts in order to avoid meeting the burdens associated with fraudulent joinder. Such a broad right would be inconsistent with the strict construction of the removal statute and the presumption in favor of remand."

*Phillips v. R.R. Dawson Bridge Co., LLC*, No. 14-cv-00480, 2014 WL 3970176, at
*5 (N.D. Ala. Aug. 12, 2014).

*Id.*

In *In re: Xarelto (Rivaroxaban) Products Liability Litigation*, No. 16-1066, 2016 WL

4409555, at *6–7 (E.D. La. Aug. 19, 2016), the court refused to sever claims against a

nondiverse physician to retain jurisdiction and send the case to an MDL because there were

common questions of law and fact, i.e., the plaintiffs contended that the pharmaceutical

defendants and medical defendants were each responsible for the death of the patient.  The court

commented that the plaintiffs had "a strong strategic interest in playing these parties against one

another at trial, which weighs against dismissal."  *Id.* (citing *Newman-Green*, 490 U.S. at 837)

(instructing that courts should consider tactical advantages to severance/nonseverance).  The

court noted that severance would force the plaintiffs to litigate against an "empty chair" (i.e., if

the cases proceeded separately, each defendant would blame the other, absent defendant).  *Id.*

The court was "cognizant of the deference owed to a plaintiff's choice of forum, especially

where Rule 21 is being used to create jurisdiction rather than preserve it."  *Id.*; *accord In re*

*Heparin Prods. Liab. Litig.*, No. CIV. 1:10-HC-60195, 2011 WL 197967, at *1-2 (N.D. Ohio

Jan. 18, 2011) (recognizing that severance to retain claims in MDL would have advantages, but

declining to do so because "empty chair" may be severely prejudicial to the plaintiff where there

was no tidy demarcation between claims, as in *Joseph*).[9]

2.  Application

i.  Dispensable party

At the first step of the severance analysis, the court considers whether Gould's is a

dispensable party.  In *Joseph*, the court outlined the two-step analysis under Rule 19:

---

[9] *Heparin* and *Joseph* were decided by the same judge.

> I first assess under Rule 19(a) whether a party is necessary for just adjudication. A party is necessary if: "(1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations." *Safeco Ins. Co., supra*, 36 F.3d at 546; Fed.R.Civ.P. 19(a).
>
> If the party is necessary, then, under Rule 19(b), I determine if he is indispensable by considering whether: 1) a judgment rendered in the party's absence would prejudice the available party; 2) such prejudice could be lessened or avoided; 3) a judgment rendered in the party's absence would be adequate; and 4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder. *Soberay, supra*, 181 F.3d at 764.

*Joseph*, 614 F. Supp. 2d at 872. In *Joseph*, the court concluded that the medical defendants were not necessary because resolution of a claim against them would not necessarily resolve the claims against the medical device manufacturer (i.e., the medical malpractice claims differed from the products liability claims). *Id.* at 872-73 (collecting decisions); *accord Saviour,* 2015 WL 6810856 at *4. The court concludes, for the purpose of this analysis, that Gould's is not a necessary party and need not address the indispensable prong.

### ii. Prejudice

At the second prong, the court considers prejudice and the tactical advantages of severance. There are considerations weighing on each side. On one hand, the Grahams chose to file their case in state court (and on the facts alleged could do so, as explained above). Courts should not lightly disregard a plaintiff's choice of forum. *Royal Canin*, 604 U.S. at 28. There will be common questions of fact and law about Gould's and Philips' alleged failures to warn about the dangers of continued use of the Philips device in issue. If forced to litigate the claims in separate forums, the Grahams could face "empty chair" defenses by both Gould's and Philips about the alleged failures to warn the Grahams. There could also be a potential of inconsistent outcomes about issues such as whether the Philips device at issue was defective.

On the other hand, the court recognizes that keeping the MDL-related aspects of these cases could minimize duplicative discovery and the potential for inconsistent pre-trial rulings.  While the Graham plaintiffs timely opposed removal and sought remand early in the case, the court withheld ruling on the motion, for many of the reasons expressed in *Joseph*, i.e., the issue of fraudulent joinder, the availability of common resources and the likelihood of potential settlement.

The current status of the MDL weighs in favor of remand.  The MDL is now largely resolved.  The court approved class action settlements of the Economic Loss and Medical Monitoring claims.[10]   Philips offered private settlements to plaintiffs who had certain qualifying injuries, as defined in the settlement.[11]   On March 14, 2025, Philips placed $1.05 billion in a fund to settle those kinds of personal injury claims.  There were 35,746 claimants (ECF No. 3698).  Some claimants filed cases in state courts which were removed to federal court and

---

[10] The court is not addressing whether the Grahams are asserting any claims that may be impacted by those settlements.

[11] *See* Personal Injury Settlement Agreement, ECF No. 2678-1 at 4:
   Qualifying Injury means either a Qualifying Respiratory Injury or a Qualifying Cancer.

   Qualifying Respiratory Injury means, as demonstrated through proof of diagnosis or treatment,
   respiratory impairment (e.g., new or worsening asthma, new or worsening COPD, chronic bronchitis, bronchiectasis, sarcoidosis, acute respiratory distress syndrome, reactive airways dysfunction syndrome, pulmonary fibrosis, pneumonitis, other interstitial lung disease, other obstructive or restrictive lung disease).
   Qualifying Cancer means one of the following, as demonstrated through proof of diagnosis or
   treatment: lung cancer; certain blood cancers (acute myeloid leukemia (AML), chronic myeloid
   leukemia (CML), or mucosa associated lymphoid tissue (MALT) of the air-pathway lymphoid
   tissue); or ENT/pathway cancers (e.g., oral cavity cancers; oropharynx cancer; nasal cavity/sinus
   cancer; nasopharynx cancer; larynx cancer; hypopharynx cancer; salivary cancer; esophageal
   cancers; thyroid cancers).

transferred to this court by the JPML; some claimants filed cases in other federal courts which were transferred to this court by the JPML; and some claimants directly filed their cases in this court.  The majority of the claimants did not file a lawsuit in court, but were listed on a census registry established by the court at the joint request of Philips and plaintiffs' leadership counsel.[12]  The settlement administrator expects all those settled claims to be paid by early 2026 (ECF No. 3698).

The record does not reflect that the Graham plaintiffs participated in the settlements in the Philips MDL.  Thus, they will be deemed "litigating plaintiffs" and, unless the case is remanded, must comply with the requirements of the Docket Management Order ("DMO") (ECF No. 2769), which the Grahams did.

Philips reported to the court in a status report on November 17, 2025, that only 9 "litigating plaintiffs," including the Grahams, complied with all the requirements of the DMO (ECF No. 3718), although deadlines for some cases have not yet expired and there is potential for additional cases to be filed.  Philips reported that there were 8 cases in which motions to dismiss were pending (ECF No. 3718).

At this stage of the MDL, considering the few cases remaining, there may be few common issues other than general causation among those plaintiffs.  Extensive discovery has already taken place.  The benefit of keeping this case in the MDL to coordinate common discovery has already largely been achieved. If the Grahams want to access the repository of documents available to plaintiffs in the MDL, they may do so if their counsel is a Participating Counsel (*see* ECF Nos. 491, 586).  Philips, as demonstrated by the extensive litigation in the MDL, has the resources to litigate in a Kentucky state court.

---

[12] In discussing the private settlement agreement for certain personal injury claims, plaintiffs' leadership counsel reported that there were over 58,000 registrants listed on the registry. (ECF No. 2768-1).

Remand at this time does not foreclose Philips' ability to access a federal forum because Philips may seek severance after the cases are remanded to the state court or Gould's may successfully challenge the claims against it. *See Alvarado v. Sweetgreen, Inc.*, 712 F. Supp. 3d 393, 411 (S.D.N.Y. 2024) ("A defendant who believes that two claims have been joined improperly for the purpose of defeating federal jurisdiction or, even if not joined for a fraudulent purpose, that the two claims will not survive in a single complaint, is not without recourse. She can still 'seek severance in state court, which would render the propriety of subsequent removal to federal court straightforward.'"); 14C Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 3723.1 (2018 & Supp. 2025).


C.  Conclusion about severance

At this stage of the MDL, considerations of efficiency, fairness, and judicial economy (in addition to the policy to consider plaintiff's choice of forum) weigh in favor of remand.  The Grahams chose to file their case in state court (and could properly do so, as explained above).  If severance was granted, they would be forced to litigate the claims against Gould's and Philips in separate forums.

 In sum, the court concludes that under the circumstances of these cases, assuming the court has authority under Rule 21 to sever and remand the claims against Gould's and retain the claims against Philips in the MDL, it declines its discretion to do so.  In the exercise of this court's discretion, the court declines to sever the claims against Gould's from the claims against Philips.  This case will be forthwith remanded to the Kentucky state court.

VII.    Counsel fees

The Grahams seek counsel fees and costs associated with their response to Philips' notice of removal and preparation of the motion for remand.  Counsel for the Grahams travelled to Pittsburgh, Pennsylvania, in person to present oral argument to the court and prepared supplemental briefs at the court's request.  Pursuant to 28 U.S.C. § 1447(c), the court "may" require Philips to pay just costs and any "actual expenses, including counsel fees, incurred as a result of the [improper] removal."

The issues raised by the parties are not straightforward, and there is some support for Philips' position (as discussed *supra*), but for the reasons set forth above, the Grahams' arguments at this stage of the proceedings are more persuasive.  Philips did not address the Kentucky Supreme Court's decision in *Russell*, which reiterated that a lenient, notice pleading standard applies, or the numerous subsequent federal cases applying that standard in the fraudulent joinder/removal context.  The court concludes the Grahams are entitled to recover reasonable costs and counsel fees for attending and arguing the issues at the May 6, 2025 hearing.

On or before February 15, 2026, counsel for the Grahams shall file a petition for the reasonable fees and costs incurred for attending and arguing at the remand hearing.  On or before March 13, 2026, Philips may file a response to the petition.

VIII.    Conclusion

For the reasons set forth above, the court concludes that Gould's was not fraudulently joined and declines to sever the claims against Philips under Rule 21.  Under those circumstances, a federal court lacks subject-matter jurisdiction over this case.  The motion to remand the Graham case to the state court (Civ. No. 22-224, ECF No. 72) will be GRANTED.   Civil Action No. 22-224 shall be remanded FORTHWITH to the Circuit Court for Jefferson County, Kentucky.  The court retains jurisdiction to resolve the fee petition in this case.

An appropriate order will be entered.


Dated: January 16, 2026

                                         BY THE COURT:

                                         /s/ Joy Flowers Conti
                                         Joy Flowers Conti
                                         Senior United States District Court Judge